FILED

02/10/2022

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 19, 2021

**STATE OF TENNESSEE v. KEVIN TUVAREY GILMORE**

**Appeal from the Circuit Court for Montgomery County**
**No. CC18-CR-1223      William R. Goodman III, Judge**

_____

**No. M2020-01620-CCA-R3-CD**

_____

The Defendant, Kevin Tuvarey Gilmore, pleaded guilty in the Montgomery County Circuit Court to evading arrest creating a risk of death, a Class D felony. *See* T.C.A. § 39-16-603 (2018). Pursuant to the plea agreement, the Defendant received a six-year sentence as a Range II offender, and the trial court would determine the manner of service. After a sentencing hearing, the trial court ordered the Defendant to serve his sentence in confinement. On appeal, the Defendant contends that the trial court erred by denying his request for probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Jacob W. Fendley, Clarksville, Tennessee, for the appellant, Kevin Tuvarey Gilmore.

Herbert H. Slatery III, Attorney General and Reporter; Katherine K. Decker, Senior Assistant Attorney General; Robert J. Nash, District Attorney General; C. Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's conviction relates to a driving-related incident, in which the Defendant fled in a motor vehicle and attempted to elude the police on July 2, 2018. The grand jury returned a ten-count indictment charging the Defendant with evading arrest creating a risk of death, three counts of unlawful firearm possession, possession of marijuana, driving when his license had been revoked, violating the motor vehicle habitual

offender (MVHO) law,[1] two traffic-related violations, and reckless driving. Pursuant to the plea agreement, the Defendant pleaded guilty as a Range II, multiple offender to evading arrest creating a risk of death and received a six-year sentence, which would run consecutively to the Defendant's effective ten-year sentence in connection with three unrelated cases.[2] The remaining charges were dismissed, and the trial court would determine the manner of service of the six-year sentence.

The guilty plea hearing transcript is not contained in the appellate record. *See State v. Bunch*, 646 S.W.2d 158, 160 (Tenn. 1983) (stating that the appellant has the burden of preparing a fair, accurate, and complete account of what transpired in the trial court relative to the issues raised on appeal); *see also* T.R.A.P. 24(b); *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012) ("[W]hen a record does not include a transcript of the hearing on a guilty plea, the Court of Criminal Appeals should determine on a case-by-case basis whether the record is sufficient for a meaningful review[.]"). Despite this deficiency, we conclude that the record is nonetheless adequate for appellate review. *See Caudle*, 388 S.W.3d at 279.

The affidavit of complaint reflects that after an officer initiated a traffic stop for speeding, the officer saw the driver and the passenger "switch seats," at which time the Defendant became the driver. The Defendant "took off from the stop," and a pursuit ensued, which ended when the Defendant "took off on foot . . . after running the red light." The officer searched the car after speaking with the passenger, and the search resulted in the recovery of a small amount of marijuana, a loaded firearm under the passenger seat, and an open container of alcohol under the passenger seat. The officer learned that the Defendant's driver's license had been revoked, that the Defendant had outstanding arrest warrants in Montgomery County and in Kentucky, and that the Defendant was a convicted felon. The Defendant was arrested approximately four hours after the traffic stop.

At the sentencing hearing, the presentence report was received as an exhibit. The thirty-one-year-old Defendant had previous convictions for seven counts of drug possession, two counts of reckless endangerment involving a deadly weapon, seven counts of evading arrest, two counts of tampering with evidence, violating the MVHO law, disorderly conduct, resisting arrest, three counts of possession of drug paraphernalia, five counts of driving when his license was revoked, an unspecified felonious drug-related offense, five traffic-related offenses, misdemeanor reckless endangerment, fifteen counts of lottery ticket fraud, violating the open container law, driving while impaired, driving

---

[1] We note that Tennessee Code Annotated sections 55-10-602 to 55-10-618 were repealed by 2019 Pub. Acts, c. 486, § 3, which became effective on November 13, 2019.

[2] Other evidence shows that in these cases, the Defendant received a ten-year sentence to be served on probation, that the Defendant violated his probation, and that the trial court revoked probation and ordered the Defendant to serve his sentence in confinement.

under the influence, two counts of misdemeanor drug possession, and an unspecified misdemeanor drug-related offense.

The presentence report reflects that the Defendant had served multiple sentences on probation in Tennessee and in Kentucky and that his probation had been revoked multiple times. As a result of violating his probation in one case, his supervision was transferred to community corrections supervision, which he likewise violated, and the Defendant's supervision was returned to probation. He violated the terms of his probation again, and he was ultimately ordered to serve the balance of his sentence in confinement. The Defendant admitted during the presentence interview that he "did get in trouble" as a juvenile but declined to elaborate.

The Defendant explained to the presentence investigator that because of his age, "making the same mistakes is slim. I have children and . . . do not want to be a statistic. I want to be there for my boys. I am taking courses to self-rehabilitate. . . . My parents aren't getting any younger either. I want to live on the right track." The Defendant had completed an adult education program and obtained his GED after leaving high school to support his first child. The Defendant reported fair mental health, although he had been diagnosed with depression and anxiety. The Defendant reported good physical health. He first drank alcohol at age fourteen, first used marijuana in high school and last used it in 2018, and first used pain medication at age twenty-one and last used it in 2018. The Defendant had sought substance abuse treatment twice. He reported having completed a treatment program in Tennessee in 2009 and in Kentucky in 2020. The Defendant was married with five children between the ages of five and twelve.

During his presentence interview, the Defendant admitted that he made poor decisions and stated that his father was absent due to his father's military service and that he "turned to the streets" for a male role model. He reported previous employment in the childcare, fast food, and construction industries and admitted he sold drugs to support his family.

The presentence report reflects that the Defendant received a Strong-R Assessment score of "high for violence."

Kimberly Gilmore, the Defendant's mother, testified that the Defendant's father served in the military and was frequently absent from the family home. She said that they divorced when the Defendant was age two. She said that the Defendant did not have a father figure during his childhood and that, as a result, he began "running the streets . . . with the wrong crowd." She said that although he associated with the wrong people, the Defendant was not a bad child. She described the Defendant as impulsive. She said that the Defendant had five children, whom he adored and who adored him. She admitted that the Defendant had lost parental rights of two of his children but said that this had "fueled

a fire up under him to get his life together." She noted a change in his behavior and said that his focus was taking rehabilitative classes and financially supporting his children. She said that the jail did not offer any rehabilitative courses, that the Defendant researched self-help programs, and that the Defendant had completed the programs on his own initiative. She said that the Defendant spent about one year in jail in Kentucky and that while there, he completed parental and substance abuse courses offered by the jail. On cross-examination, Ms. Gilmore testified that the Defendant had been in and out of confinement since he was age seventeen.

Jessica Bailey, the mother of the Defendant's oldest son, testified that she and the Defendant ended their relationship ten years before the sentencing hearing. She said that before the present case, the Defendant spent a lot of time in confinement and that although the Defendant would call to speak to their son, the conversations were usually brief. She said, though, that since the Defendant's arrest in this case, he and their son spoke frequently and that the Defendant helped their son with homework during the calls and discussed their son's basketball team. She said that although the Defendant had been a good father, he had not until now been a "very active, concerned father." She noted that the Defendant had apologized to her and their son for being absent. She denied that the Defendant had a history of violence.

A certificate of completion reflecting that the Defendant had completed the "ACCI Cognitive Awareness Cognitive Lifeskills Course" while in confinement at the Montgomery County Jail in 2020 was received as an exhibit. A photograph of a computer screen showing that the Defendant had completed "ACT WorkKeys" courses in workplace documents, applied mathematics, and graphic literacy while in confinement in Kentucky in 2019 was also received as an exhibit.

The Defendant made a lengthy allocution, during which he expressed his desire to continue his rehabilitation. He stated that he was focused and determined to change, and that he was now self-aware. The Defendant traced the roots of his criminal history to "hanging with the wrong crowd at a very young age" and said that he began looking up to the wrong people, who were in and out of jail and sold drugs. The Defendant said that dropping out of school was a "huge mistake" and that his felony marijuana conviction "set [him] up for failure." The Defendant said that after his arrest in the present case, he became "tired" of letting down his parents and children and that he was "done with that lifestyle." He stated that during his two years of pretrial confinement, he had completed substance abuse, parental, cognitive awareness, and employment courses. He stated that he was working to become someone whom his children and younger brother could admire. The Defendant said that he planned to attend a technology school where he would obtain a certification in operating heavy machinery, to start a career in the construction industry, and to make an "honest living." He acknowledged that unemployment and not having a

driver's license had been "two key factors in [his] criminal history." He expressed the desire to give back to the community by working with troubled youth after his release.

The trial court ordered the Defendant to serve his six-year sentence in confinement. In making its determinations, the court stated that it had considered the evidence at the sentencing hearing. Although the court commended the Defendant for the steps he had taken to better himself, the court expressed concern about the contents of the presentence report. The court found that the Defendant had a "significant history of criminal conduct" and that the Defendant's "offense history" showed activities that were "something of a danger to the community." The court likewise found that, based upon the Defendant's previous probation violations, measures less restrictive than confinement had frequently or recently been applied unsuccessfully to the Defendant. This appeal followed.

The Defendant contends that the trial court erred by ordering him to serve his six-year sentence in confinement. He argues that the court should have granted his request for probation. The State responds that the trial court did not abuse its discretion by ordering the Defendant to serve his sentence in confinement.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103, -210; *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. §§ 40-35-102 (2018), 41-1-126 (2018) (validated risk and needs assessments).

The standard of review for questions related to probation or any other alternative sentence is an abuse of discretion with a presumption of reasonableness. *Caudle*, 388 S.W.3d at 278-79. Generally, probation is available to a defendant sentenced to ten years or less. T.C.A. § 40-35-303(a) (2018). The burden of establishing suitability for probation rests with a defendant, who must demonstrate that probation will "'subserve the ends of justice and the best interest of both the public and the defendant.'" *State v. Souder*, 105 S.W.3d 602, 607 (Tenn. Crim. App. 2002) (quoting *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990)); *see* T.C.A. § 40-35-303(b); *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).

A sentence is based upon "the nature of the offense and the totality of the circumstances," including a defendant's background. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). A trial court is permitted to sentence a defendant to incarceration when:

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2018); *see Trotter*, 201 S.W.3d at 654. A trial court must consider (1) the defendant's amenability to correction, (2) the circumstances of the offense, (3) the defendant's criminal record, (4) the defendant's social history, (5) the defendant's physical and mental health, and (6) the deterrence value to the defendant and others. *See State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (concluding that the same factors used to determine whether to impose judicial diversion are applicable in determining whether to impose probation); *see also State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998); *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

The record reflects that the trial court considered the evidence at the sentencing hearing, the presentence report, arguments of counsel, the principles of sentencing, the nature and characteristics of the offenses, the Defendant's potential for rehabilitation and treatment, and the risks and needs assessment. The record, likewise, reflects as a Range II, multiple offender, the Defendant was not a favorable candidate for an alternative sentence. *See* T.C.A. § 40-35-102(6)(a) (2018). The trial court was heavily influenced by the Defendant's extensive previous criminal history and his previous failures complying with the terms of probation. *See id*. § 40-35-103(1)(A), (C). The Defendant's criminal history spanned an extensive period of time and included multiple counts each of drug-related offenses, reckless endangerment, evading arrest, fraud, and driving under the influence. Likewise, the Defendant received the benefit of probation and community corrections in many of his previous cases, and he violated the conditions of his release on multiple occasions. Therefore, we conclude that trial court's determinations are supported by the record and that the Defendant has failed to demonstrate that the court abused its discretion by denying the Defendant's request for probation and ordering him to serve his six-year sentence in confinement. He is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE